**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

BRENT H.,

    *Plaintiff,*

v.

COMMISSIONER OF SOCIAL
SECURITY,

    *Defendant.*

_____/

Case No. 1:25-cv-12606

Patricia T. Morris
United States Magistrate Judge

**MEMORANDUM OPINION AND ORDER ON**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 14, 16)**

## I. **CONCLUSION**

For the reasons set forth below, Plaintiff's motion for summary judgment (ECF No. 14) is **DENIED**, the Commissioner of Social Security's motion for summary judgment (ECF No. 16) is **GRANTED**, and the decision of the administrative law judge (ALJ) is **AFFIRMED**.

## II. **ANALYSIS**

### A. **Introduction and Procedural History**

On August 15, 2021, Plaintiff filed an application for disability insurance benefits, alleging he became disabled on November 1, 2018.  (ECF No. 12-1, PageID.1473).  On October 18, 2021, Plaintiff filed an application for supplemental

1

security income, alleging he became disabled on the same date. (*Id.*). The Commissioner initially denied the applications on March 18, 2022, and on reconsideration on July 31, 2023. (*Id.*). Plaintiff then requested a hearing before an ALJ, which was held telephonically on May 6, 2024. (*Id.*). The ALJ issued a written decision on August 26, 2024, finding Plaintiff was disabled starting August 26, 2024, but not before that date. (*Id.* at PageID.1473–85). Following the ALJ's decision, Plaintiff requested review from the Appeals Council, which denied the request on June 18, 2025. (*Id.* at PageID.1457–59).

Following the Appeals Council's denial of review, Plaintiff sought judicial review on August 20, 2025. (ECF No. 1). The parties consented to the Undersigned "conducting any or all proceedings in this case, including entry of a final judgment and all post-judgment matters." (ECF No. 10). The parties have since filed cross-motions for summary judgment for which briefing is complete. (ECF Nos. 14, 16).

**B.    Standard of Review**

District courts have jurisdiction to review the Commissioner's final administrative decisions pursuant to 42 U.S.C. § 405(g). The review is restricted solely to determining whether "the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (citation modified). Substantial evidence is "more than a scintilla of evidence but

less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citation modified). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation modified).

A district court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). Courts will "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* (citation modified).

## C.    Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

3

months."  42 U.S.C. § 1382c(a)(3)(A).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, [the ALJ] consider[s] [the claimant's] work activity, if any.  If [the claimant is] doing substantial gainful activity, [the ALJ] will find that [the claimant is] not disabled.
>
> (ii) At the second step, [the ALJ] consider[s] the medical severity of [the claimant's] impairment(s).  If [the claimant] do[es] not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, [the ALJ] will find that [the claimant is] not disabled.
>
> (iii) At the third step, [the ALJ] also consider[s] the medical severity of [the claimant's] impairment(s).  If [the claimant has] an impairment(s) that meets or equals one of [the] listings in appendix 1 of this subpart and meets the duration requirement, [the ALJ] will find that [the claimant is] disabled.
>
> (iv) At the fourth step, [the ALJ] consider[s] [his or her] assessment of [the claimant's] residual functional capacity and . . . past relevant work. If [the claimant] can still do . . . past relevant work, [the ALJ] will find that [the claimant is] not disabled.
>
> (v) At the fifth and last step, [the ALJ] consider[s] [his or her] assessment of [the claimant's] residual functional capacity and . . . age, education, and work experience to see if [the claimant] can make an adjustment to other work.  If [the claimant] can make an adjustment to other work, [the ALJ] will find that [the claimant is] not disabled.  If [the claimant] cannot make an adjustment to other work, [the ALJ] will find that [the claimant is] disabled.

20 C.F.R. § 404.1520(4); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The claimant must provide evidence establishing his or her residual functional capacity (RFC), which "is the most [the claimant] can still do despite [his or her] limitations," and is assessed using "all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

**D. ALJ Findings**

Following the five-step sequential analysis, the ALJ determined Plaintiff was not disabled before August 26, 2024. (ECF No. 12-1, PageID.1485). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (*Id.* at PageID.1476). At step two, the ALJ found the following

5

severe impairments: degenerative disc disease; spinal stenosis; degenerative joint disease; carpal tunnel syndrome; and chronic obstructive pulmonary disease. (*Id.* at PageID.1475–76).

At step three, the ALJ found none of the impairments, either independently or in combination, met or medically equaled in severity or duration the criteria of any listing. (*Id.* at PageID.1476–77).

Next, the ALJ found Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) [except] no climbing of ladders, ropes, scaffolds, or stairs; occasional climbing of ramps, stooping, kneeling, and crouching; no crawling or balancing as defined in the Dictionary of Occupational Titles; frequent handling, fingering, and feeling; no overhead reaching and no more than frequent reaching in other directions; no exposure to hazards such as unprotected elevations or dangerous moving machinery; no concentrated exposure to vibration; and no concentrated exposure to pulmonary irritants.

(*Id.* at PageID.1477).

At step four, the ALJ found Plaintiff was unable to perform any past relevant work. (*Id.* at PageID.1483). However, at step five, the ALJ found other jobs in the national economy that Plaintiff could have performed prior to August 26, 2024. (*Id.* at PageID.1483–84). Specifically, the ALJ found Plaintiff could have performed the requirements of a mail clerk (106,300 jobs in the national economy), an inspector (201,000), and a folder (100,000). (*Id.*). The ALJ thus concluded Plaintiff was "not disabled" prior to August 26, 2024, when Plaintiff's age category changed to

advanced age.  (*Id.* at PageID.1484–85).

### E.     Administrative Record

Plaintiff raises two issues on appeal.  First, Plaintiff argues the ALJ failed to properly consider his subjective allegations of symptoms.  Second, Plaintiff argues the ALJ's RFC is unsupported by substantial evidence.  While the Court has reviewed the entire record, it will only summarize the evidence relevant to Plaintiff's issues on appeal.

Plaintiff reported 10/10 neck and right shoulder pain after pulling a pallet at work in April 2018.  (ECF No. 12-1, PageID.1860).  Plaintiff further reported that the pain caused weakness that made him drop things. (*Id.* at PageID.2010).  An MRI of the shoulder showed no tear but did show mild to moderate degenerative changes of the acromioclavicular joint.  (*Id.* at PageID.1860, 1880).  Examination of his shoulder was normal but "his cervical spine was more concerning."  (*Id.* at PageID.1860).  His neck flexion was significantly limited upon examination, with extension and rotation remaining intact, and Plaintiff reported dullness and tenderness to palpitation and pinprick testing of his neck.  (*Id.* at PageID.1858, 1860).  His grip and extension in both arms was strong and equal. (*Id.*).

Plaintiff had an MRI of his lumbar spine in September 2018, which showed

> spondylosis of C3-4, C4-5, and C5-6.  Disc desiccation at C5-6, and C6-7.  At C5-6, there is mild central canal and moderate foraminal stenosis.  At C6-7, there is a disc protrusion, which results in mild to moderate central canal stenosis, as well as severe right foraminal

stenosis, with effacement of the right C7 nerve root.  There is also a disc osteophyte complex, which causes moderate to severe left foraminal stenosis.

(*Id.* at PageID.1858, 1837–38, 2019–20).[1]  His doctor recommended pain injections. Plaintiff received cervical epidural steroid injections to help manage his neck pain in October and November, with about 30% improvement of his symptoms.  (*Id.* at PageID.1856–57).  Plaintiff also treated his pain with physical therapy.

Plaintiff had a neurology appointment in November 2018.  He complained of neck and low back pain, but his exam results reflected normal muscle tone, gait, and deep tendon reflexes.  (*Id.* at PageID.1944).  A February 2019 nerve conduction study and needle EMG examination of Plaintiff's lower extremities was likewise normal.  (*Id.* at PageID.1946).  A physical exam of his spine at this time showed reduced range of motion and tenderness on palpitation with a pain level of 2/10 reported.  (*Id.* at PageID.2000–01).

Also in February, Plaintiff complained of hand paresthesia, but all exams were normal; the doctor advised him to avoid heavy lifting and stay physically active. (*Id.* at PageID.1948).  In March, Plaintiff reported swelling, numbness, and pain; physical exams continued to be mostly normal. (*Id.* at PageID.1998).  In April 2019, Plaintiff's doctor noted that while Plaintiff's pain was initially severe, it "significantly improve[d]," going down to a 3/10 with physical therapy.  (*Id.* at

---

[1] An August 2021 MRI showed similar results.  (ECF No. 12-1, PageID.1952, 2012–13).

PageID.2010).  Upon examination, Plaintiff showed full motor strength in the upper and lower extremities, with diminished perception to touch in the left C7–C8 distribution.  (*Id.*).  He was able to perform numerous tests without difficulty, such as the heel walk, toe walk, tandem gait, and bending at the waist.  (*Id.* at PageID.2010–11).  Flexion and lateral rotation of the neck caused discomfort.  (*Id.* at PageID.2011).

In May, Plaintiff followed up with the neurologist, complaining of worsening hand paresthesia and fluctuating low back pain but "[o]verall he ha[d] been doing pretty well and able to perform his activities of daily living without difficulty.  No falls."  (*Id.* at PageID.1945).  His examination again showed no drift in the arms or legs and normal muscle tone, gait, and reflexes.  (*Id.*).  He reported his pain at 2/10 around this time.  (*Id.* at PageID.1995).

In June 2019, Plaintiff's neck pain was unchanged with his pain level remaining at 3/10, which improved with physical therapy.  (*Id.* at PageID.2008).  Both he and his doctor agreed that the risks of surgery were not worth taking given his level of pain and Plaintiff wished "to carry on with the conservative management."  (*Id.*).  Medical evidence is sparse for the next two years.  From July 2019 through January 2022, Plaintiff continued to report his pain at 0–2/10 but reported his grasp was decreasing in his hands; physical exams continued to be largely unremarkable except for some tenderness and pain in the neck.  (*Id.* at

9

PageID.1961–92).[2]  He reported dropping things, waking up with no feeling in his legs, and other general weakness and tingling sensations during this time.  (*Id.*).

Plaintiff underwent another nerve conduction study on his lower extremities in August 2021, which was normal.  (*Id.* at PageID.1949).  However, a needle EMG examination showed a mild, chronic left S1 radiculopathy.  (*Id.*).  An EMG on his upper extremities was normal except for a showing of bilateral carpal tunnel syndrome at the wrist (Plaintiff had already been receiving treatment for carpal tunnel prior to his claimed date of disability).  (*Id.* at PageID.1944, 1947, 1950).  The neurologist noted Plaintiff took Tylenol as needed for his neck and hand pain.  (*Id.* at PageID.1951).  A brain MRI around the same time was unremarkable.  (*Id.* at PageID.2014).

At a December 2022 physical, Plaintiff complained that he had strained his neck a month ago.  (*Id.* at PageID.2186).  Physical exams were unremarkable except for tenderness in the neck.  (*Id.* at PageID.2186–87).

Plaintiff presented to the neurologist again in June 2023, complaining his pain was back to a 10/10, that he had weakness in his arms and legs, and that he would lose the ability to stand sometimes and would fall.  (*Id.* at PageID.2193).  He appeared comfortable and un-distressed, with full senses and motor strength in his

---

[2] In February 2020, Plaintiff's doctor opined he "will never be able to work" due to his chronic neck pain, hand numbness, and spinal stenosis in cervical region.  (ECF No. 12-1, PageID.1982).

extremities.  (*Id.* at PageID.2184, 2193).  Plaintiff performed other tests such as the heel walk and back bending without any difficulties.  (*Id.* at PageID.2194).  In reviewing Plaintiff's 2021 imaging tests, the neurologist noted the findings did not explain the extent of his reported symptoms.  (*Id.*).  Other evidence will be discussed as necessary below.

### F.    Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision.  42 U.S.C. § 423(d)(5)(B).  The regulations, applicable to applications for disability benefits filed on or after the effective date of March 27, 2017, such as Plaintiff's application here, distinguish between acceptable medical sources, medical sources, and nonmedical sources.  An acceptable medical source means a medical source who is a:

(1) Licensed physician (medical or osteopathic doctor);

(2) Licensed psychologist, which includes:

> (i)    A licensed or certified psychologist at the independent practice level; or
>
> (ii)   A licensed or certified school psychologist, or other licensed or certified individual with another title who performs the same function as a school psychologist in a school setting, for impairments of intellectual disability, learning disabilities, and borderline intellectual functioning only;

(3) Licensed optometrist for impairments of visual disorders, or measurement of visual acuity and visual fields only, depending on the scope of practice in the State in which the optometrist practices;

11

(4) Licensed podiatrist for impairments of the foot, or foot and ankle only, depending on whether the State in which the podiatrist practices permits the practice of podiatry on the foot only, or on the foot and ankle;

(5) Qualified speech-language pathologist for speech or language impairments only.  For this source, *qualified* means that the speech-language pathologist must be licensed by the State professional licensing agency, or be fully certified by the State education agency in the State in which he or she practices, or hold a Certificate of Clinical Competence in Speech-Language Pathology from the American Speech-Language-Hearing Association;

(6) Licensed audiologist for impairments of hearing loss, auditory processing disorders, and balance disorders within the licensed scope of practice only . . . ;

(7) Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice . . . ; or

(8) Licensed Physician Assistant for impairments within his or her licensed scope of practice . . . .

20 C.F.R. § 404.1502(a) (2021).  A medical source is

an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law, or an individual who is certified by a State as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law.

*Id.* § 404.1502(d).  In contrast, a nonmedical source is "a source of evidence who is not a medical source."  *Id.* § 404.1502(e).  "This includes, but is not limited to: (1) [the claimant]; (2) Educational personnel (for example, school teachers, counselors, early intervention team members, developmental center workers, and

12

daycare center workers); (3) Public and private social welfare agency personnel; and (4) Family members, caregivers, friends, neighbors, employers, and clergy." *Id.*

The Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." *Id.* § 404.1520c(a). "The most important factors [the SSA] consider[s] when evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id.* The SSA will consider several factors when it contemplates "the medical opinion(s) and prior administrative medical findings" in a case. *Id.* § 404.1520c(c).

The first factor is "supportability." For this factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1).

The SSA will also consider the "consistency" of the opinion. In essence, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative

13

medical finding(s) will be." *Id.* § 404.1520c(c)(2).

In addition, the SSA will consider the source's "[r]elationship with the claimant." *Id*. § 404.1520c(c)(3). This factor includes analysis of:

(i)    Length of the treatment relationship. The length of time a medical source has treated [the claimant] may help demonstrate whether the medical source has a longitudinal understanding of [the claimant's] impairment(s);

(ii)    Frequency of examinations. The frequency of [the claimant's] visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of [the claimant's] impairment(s);

(iii)    Purpose of the treatment relationship. The purpose for treatment [the claimant] received from the medical source may help demonstrate the level of knowledge the medical source has of [the claimant's] impairment(s);

(iv)    Extent of the treatment relationship. The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of [the claimant's] impairment(s);

(v)    Examining relationship. A medical source may have a better understanding of [the claimant's] impairment(s) if he or she examines [the claimant] than if the medical source only reviews evidence in [the claimant's] folder.

*Id.*

The fourth factor of the SSA's analysis is "specialization." In making this determination, the SSA will consider

[t]he medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to

14

> become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

*Id.* § 404.1520c(c)(4).

Finally, the SSA will consider "other factors." These may include any other information that "tend[s] to support or contradict a medical opinion or prior administrative medical finding." *Id.* § 404.1520c(c)(5). Other factors include "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *Id.* Further, when the SSA considers "a medical source's familiarity with the other evidence in a claim, [it] will also consider whether new evidence [it] receive[s] after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive." *Id.*

As to the duty to articulate how persuasive the medical opinions and prior administrative medical findings are considered, the new regulations provide "articulation requirements." The ALJ will consider "source-level articulation." Pursuant to this requirement,

> [b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for [the ALJ] to articulate in each determination or decision how [he or she] considered all of the factors for all of the medical opinions and prior administrative medical findings in [each] case

15

record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative finding(s), [the ALJ] will articulate how [he or she] considered the medical opinions or prior administrative findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.

*Id.* § 404.1520c(b)(1). The regulation reiterates that the ALJ is "not required to articulate how [he or she] considered each medical opinion or prior administrative finding from one medical source individually." *Id.*

The regulations stress that the "factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors [the SSA] consider[s] when [it] determine[s] how persuasive [it] find[s] a medical source's medical opinions or prior administrative medical findings to be." *Id.* § 404.1520c(b)(2). As such, the SSA

will explain how [it] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the claimant's] determination or decision. [The SSA] may, but [is] not required to, explain how [it] considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when [it] articulate[s] how [it] consider[s] medical opinions and prior administrative medical findings in [the claimant's] case record.

*Id.*

When medical opinions or prior administrative findings are "equally persuasive," "well-supported," and "consistent with the record" "about the same issue," "but are not exactly the same, [the ALJ] will articulate how [he or she]

16

considered the other most persuasive factors . . . for those medical opinions or prior administrative medical findings in [the claimant's] determination or decision." *Id.* § 404.1520c(b)(3).  The regulations clarify that the SSA is "not required to articulate how [it] considered evidence from nonmedical sources using the requirements of paragraphs (a)–(c) of this section." *Id.* § 404.1520c(d).

In addition, the regulations expressly state that the SSA will not consider "evidence that is inherently neither valuable nor persuasive" and "will not provide any analysis about how [it] considered such evidence in [its] determination or decision, even under § 404.1520c." *Id.* § 404.1520b(c).  The regulations categorize evidence that is inherently neither valuable nor persuasive as: "[d]ecisions by other governmental and nongovernmental entities"; "[d]isability examiner findings," meaning "[f]indings made by a State agency disability examiner made at a previous level of adjudication about a medical issue, vocational issue, or the ultimate determination about whether [the claimant is] disabled"; and "[s]tatements on issues reserved to the Commissioner[,]" including

(i)     Statements that [the claimant is] or [is] not disabled, blind, able to work, or able to perform regular or continuing work;

(ii)    Statements about whether or not [the claimant has] a severe impairment(s);

(iii)   Statements about whether or not [the claimant's] impairment(s) meet the duration requirement . . . ;

(iv)    Statements about whether or not [the claimant's] impairment(s)

17

meets or medically equals any listing in the Listing of Impairments . . . ;

(v)     Statements about what [the claimant's] residual functional capacity is using [the SSA's] programmatic terms about the functional exertional levels . . . instead of descriptions about [the claimant's] functional abilities and limitations . . . ;

(vi)    Statements about whether or not [the claimant's] residual functional capacity prevents [the claimant] from doing past relevant work . . . ;

(vii)   Statements that [the claimant] [does] or [does] not meet the requirements of a medical-vocational rule . . . ; and

(viii)  Statements about whether or not [the claimant's] disability continues or ends when [the SSA] conduct[s] a continuing disability review.

*Id.* § 404.1520b(c)(3).

The regulations also provide that

[b]ecause a decision by any other governmental agency or a nongovernmental entity about whether [a claimant is] disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on [the SSA] and is not [its] decision about whether [the claimant is] disabled or blind under [SSA] rules.

*Id.* § 404.1504.   Therefore, the SSA "will not provide any analysis in [its] determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether [the claimant is] disabled, blind, employable, or entitled to any benefits." *Id.* The SSA will, however, "consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that [it] receive[s] as evidence in [a] claim . . . ."

*Id.*

The regulations clarify that "[o]bjective medical evidence means signs, laboratory findings, or both." *Id.* § 404.1502(f). Signs are defined as "one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [the claimant's] statements (symptoms)." *Id.* § 404.1502(g). Further, "[s]igns must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development or perception, and must also be shown by observable facts that can be medically described and evaluated." *Id.* Laboratory findings "means one or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques," which "include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as X-rays), and psychological tests." *Id.* § 404.1502(c).

The most recent amendments to the regulations also tweaked the manner in which the SSA evaluates symptoms, including pain:

> In determining whether [the claimant is] disabled, [the SSA will] consider all [the claimant's] symptoms, including pain, and the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. [The SSA] will

19

> consider all [the claimant's] statements about [his or her] symptoms, such as pain, and any description [the claimant's] medical sources or nonmedical sources may provide about how the symptoms affect [the claimant's] activities of daily living and [his or her] ability to work.

*Id.* § 404.1529(a).  But the SSA clarified that

> statements about [the claimant's] pain or other symptoms will not alone establish that [the claimant is] disabled.  There must be objective medical evidence from an acceptable medical source that shows [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of [the claimant's] pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that [the claimant is] disabled.

*Id.*   Further, "[i]n evaluating the intensity and persistence of [the claimant's] symptoms, including pain, [the SSA] will consider all of the available evidence, including [the claimant's] medical history, the medical signs and laboratory findings, and statements about how [the claimant's] symptoms affect [him or her]."  *Id.*  The SSA will "then determine the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [the claimant's] symptoms affect [his or her] ability to work."  *Id.*

Finally, the SSA noted that "[b]ecause symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, [it]

20

will carefully consider any other information [the claimant] may submit about [his or her] symptoms." *Id.* § 404.1529(c)(3).  This other information may include "[t]he information that [the claimant's] medical sources or nonmedical sources provide about [the claimant's] pain or other symptoms," such as "what may precipitate or aggravate [the claimant's] symptoms, what medications, treatments or other methods [the claimant uses] to alleviate them, and how the symptoms may affect [the claimant's] pattern of daily living," which "is also an important indicator of the intensity and persistence of [the claimant's] symptoms." *Id.*

> Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that [the claimant's] medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account . . . . [The SSA] will consider all of the evidence presented, including information about [the claimant's] prior work record, [the claimant's] statements about [his or her] symptoms, evidence submitted by [the claimant's] medical sources, and observations by [the SSA's] employees and other persons.

*Id.*  Factors relevant to a claimant's symptoms, such as pain, include:

> (i)     [D]aily activities;

> (ii)    The location, duration, frequency, and intensity of . . . pain or other symptoms;

> (iii)   Precipitating and aggravating factors;

> (iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

> (v)     Treatment, other than medication, . . . received for relief of . . .

pain or other symptoms;

(vi)    Any measures . . . used to relieve . . . pain or other symptoms.

*Id.*

The new regulations also impose a duty on the claimant: "[i]n order to get benefits, [the claimant] must follow treatment prescribed by [his or her] medical source(s) if this treatment is expected to restore [his or her] ability to work." *Id.* § 404.1530(a).  Stated differently, "[i]f [the claimant does] not follow the prescribed treatment without a good reason, [the SSA] will not find [the claimant] disabled or, if [the claimant is] already receiving benefits, [the SSA] will stop paying . . . benefits." *Id.* § 404.1530(b).  Acceptable (or "good") reasons for failure to follow prescribed treatment include:

(1)    The specific medical treatment is contrary to the established teaching and tenets of [the claimant's] religion;

(2)    The prescribed treatment would be cataract surgery for one eye, when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment;

(3)    Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment;

(4)    The treatment because of its magnitude (e.g., open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky for [the claimant]; or

(5)    The treatment involves amputation of an extremity, or a major part of an extremity.

*Id.* § 404.1530(c).

### G.    Argument and Analysis

Plaintiff first argues the ALJ failed to properly consider his subjective allegations of symptoms. Second, Plaintiff argues the ALJ's RFC is unsupported by substantial evidence.

### 1.    Subjective Testimony

Plaintiff argues the ALJ discounted his allegations of disabling limitations without providing the narrative explanation required under the regulations and SSR 16-3p. (ECF No. 14, PageID.2248). Plaintiff cites to his MRI and explains that the imaging corroborates his subjective reports. (*Id.* at PageID.2249).

According to SSR 16-3p, an ALJ must analyze the consistency of the claimant's statements, considering his or her testimony about pain or other symptoms with the rest of the relevant evidence in the record and other factors. SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). This analysis and the conclusions drawn from it—formerly termed a credibility determination—can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *Kim W. v. Comm'r of Soc. Sec.*, 24-cv-12648, 2025 WL 3118954, at *9 (E.D. Mich. Oct. 3, 2025), *report and recommendation adopted*, 2025 WL 3113622 (E.D. Mich. Nov. 6, 2025).

The regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529(a); SSR 16-3p, 2016 WL 1119029, at *2. The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2016 WL 1119029, at *2; *Stanley v. Sec'y of Health & Hum. Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 16-3p, 2016 WL 1119029, at *6.

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Hum. Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (internal quotation omitted), a claimant's description of his or her physical or mental impairments will "not alone establish that [he or she is] disabled." 20 C.F.R. § 404.1529(a). The absence of objective, confirming evidence obligates the ALJ to consider the following factors:

(i) [D]aily activities;
(ii) The location, duration, frequency, and intensity of . . . pain;
(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication . . . take[n] to alleviate . . . pain or other symptoms;
(v) Treatment, other than medication, . . . received for relief of . . . pain . . . ;
(vi) Any measures . . . used to relieve . . . pain; and

(vii)   Other factors . . . .

20 C.F.R. § 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039–40 (6th Cir. 1994); SSR 16-3p, 2016 WL 1119029, at *7.

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility" as long as the assessment is supported by substantial evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *see also Saunders v. Kijakzi*, No. 20-cv-12210, 2022 WL 885838, at *3 (E.D. Mich. Mar. 25, 2022) ("'It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant'" (quoting *Rogers.*, 486 F.3d at 247)).

Claims of cherry-picking record evidence rarely succeed: "the same process can be described more neutrally as weighing the evidence." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009); *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (crediting argument of cherry picking requires court to re-weigh record evidence).  The Court may not reweigh evidence on appeal. *Nasser v. Comm'r of Soc. Sec.*, No. 22-1293, 2022 WL 17348838, at *2 (6th Cir. 2022).

Notably, except for Plaintiff's citation to SSR 16-3p and the regulations, Plaintiff provides no citation to caselaw or other precedent in this section of his

25

brief.[3]   Moreover, the ALJ repeatedly discussed Plaintiff's MRI results and noted that even Plaintiff's neurologist thought the findings did not explain the extent of Plaintiff's alleged symptoms.  (ECF No. 12-1, PageID.1480).  Ultimately, the ALJ concluded that the evidence documented impairments that could reasonably be expected to produce some symptoms and limitations, just not to the extent reported by Plaintiff.  (*Id.* at PageID.1481).

In discounting Plaintiff's testimony, the ALJ noted numerous records showing conservative treatment paired with positive responses to the treatment and largely normal exam findings (while also noting that some exams showed some weakness and decrease in sensation).  *See Kepke v. Comm. of Soc. Sec.*, 636 F. App'x 625, 638–39 (6th Cir. 2016) (collecting cases where an ALJ reasonably discounted complaints of disabling pain where the record showed plaintiff "received only routine and/or conservative treatment for the allegedly disabling impairments"); *Adams v. Comm'r of Soc. Sec.*, No. 23-3284, 2023 WL 6366106, at *2 (6th Cir. Sept. 28, 2023) (holding history of conservative treatment, such as epidural injections, medial-branch blocks, and prescription pain medication, and plaintiff's largely unremarkable physical examinations, supported the ALJ's determination that

---

[3] For example, Plaintiff argues, "The Sixth Circuit has repeatedly cautioned against equating conservative treatment with non-disability when the record demonstrates persistent objective pathology," without providing any citations to support his argument. (ECF No. 14, PageID.2249).

26

plaintiff did not have disabling limitations).  The facts here are on all fours with *Adams*.  Plaintiff treated his neck pain conservatively, with physical therapy, Tylenol, and pain injections and saw large improvements, which included pain reports of 10/10 prior to treatment to 2/10 after treatment.  His physical examinations were largely unremarkable, consistently showing an intact gait, full motor strength, and other abilities.  Although Plaintiff exhibited tenderness in his neck upon examination, substantial evidence nonetheless supports the ALJ's findings. Plaintiff's argument amounts to a request to re-weigh the evidence, which the Court cannot do.

Plaintiff does not show any greater restrictions he required with his limitations and the ALJ's determination is entitled to deference.  Plaintiff's citations to evidence such as his MRIs and other imaging—all considered by the ALJ—do not show additional limitations were warranted, let alone the nature of such limitations. *Flowers v. Comm'r of Soc. Sec.*, No. 14-cv-12449, 2015 WL 4274961, at *4 (E.D. Mich. July 14, 2015) ("[T]he MRI and CT scan reports provide no insight into what additional limitations Plaintiff may suffer . . . .  At most, Plaintiff leaves the ALJ and the Court to speculate with regard to [further limitations].").

Plaintiff also argues the ALJ was not allowed to disregard his doctor's opinion that he was unable to work.  (ECF No. 14, PageID.2249–50).  Not so.  Statements that a claimant is unable to work—even from a doctor—are neither valuable nor

persuasive and need not be considered by the ALJ.  20 C.F.R. § 404.1520b(c)(3); *Halvorsen v. Comm. of Soc. Sec.*, No. 21-cv-10951, 2022 WL 2232490, at *4 (E.D. Mich. June 2, 2022), *report and recommendation adopted*, 2022 WL 2230662 (E.D. Mich. June 21, 2022).

Finally, many of Plaintiff's citations to record evidence are to his own subjective report of symptoms.  This is not valuable evidence in arguing that evidence supports his subjective symptoms.  The ALJ specifically found Plaintiff's subjective reports were not entirely persuasive.  To use those same reports to argue his symptoms were as severe as he said they were is circular and does not show any error.

The Court's review of the ALJ's detailed decision, the medical records, and Plaintiff's arguments show the ALJ properly considered the appropriate factors in weighing Plaintiff's statements regarding his subjective symptoms.  As such, Plaintiff has not shown the ALJ erred nor that the ALJ's decision is not supported by substantial evidence.

### 2.      Substantial Evidence

Plaintiff next argues that the RFC is not supported by substantial evidence because it was unaccompanied by a function-by-function assessment. (ECF No. 14, PageID.2252).  However, much of this argument substantially overlaps with his first (such as his discussion of Plaintiff's MRI and self-reports) and the Court's analysis

in the prior subsection applies to this argument as well.

Plaintiff cites *Minor v. Comm. of Soc. Sec.*, 513 F. App'x 417, 433–36 (6th Cir. 2013), where the Sixth Circuit remanded after concluding that an ALJ "failed to review any of this extensive objective medical evidence demonstrating [the plaintiff's] physical illnesses and injuries."  Here, however, many of Plaintiff's arguments cite medical evidence that was considered and weighed by the ALJ.  In other words, this argument is another improper attempt to get the Court to reweigh the evidence.  But even if this Court were to come to a different conclusion, there is substantial evidence that supports the ALJ's RFC and that is enough to defeat Plaintiff's arguments.  *See, e.g.*, *White v. Colvin*, No. 14-cv-12870, 2015 WL 5210243, at *12 (E.D. Mich. Sept. 3, 2015) ("Where, as here, the ALJ provided a narrative discussion of a claimant's symptoms, their effect on the claimant's work, and how he reached those conclusions, the ALJ's narrative substantially complied with the requirements of SSR 96-8p."); *Deweese v. Comm'r of Soc. Sec.*, No. 17-14081, 2018 WL 8244844, at *7 (E.D. Mich. Oct. 9, 2018), *report and recommendation adopted*, 2019 WL 1324238 (E.D. Mich. Mar. 25, 2019); *Taylor v. Comm'r of Soc. Sec.*, No. 25-cv-10068, 2026 WL 867499, at *3 (E.D. Mich. Mar. 30, 2026).

Additionally, Plaintiff argues SSR 96-8p required the ALJ to perform a function-by-function assessment of the medical evidence.  However, "[a]lthough a

function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (quotation omitted).  Instead, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record."  *Id.* at 548; *see also Taylor*, 2026 WL 867499, at *2–*3.[4]  As discussed above, the ALJ did so here.

Plaintiff argues the RFC contains internal inconsistencies because the ALJ prohibited work requiring balancing yet found Plaintiff was capable of performing light work that generally requires frequent standing and walking.  But the ALJ questioned the vocational expert about these specific limitations, including light work as defined by the dictionary of occupational titles and a limit on no balancing. (ECF No. 12-1, PageID.1521).  The vocational expert testified as to any conflicts

---

[4] This is not the only time Plaintiff's briefing has been disingenuous with its statements of fact or law.  The Court has already summarily dismissed several such arguments above. Another example is Plaintiff's statement that "[t]he decision contains no medical opinion supporting the conclusion that Plaintiff could meet the lifting and carrying demands of light work on a sustained basis."  (ECF No. 14, PageID.2254).  "Light work involves lifting no more than 20 pounds at a time with frequent lifting and carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).  The State agency medical consultants—both at the initial and reconsideration level—found Plaintiff capable of occasionally lifting or carrying up to 20 pounds and frequently lifting or carrying up to 10 pounds.  (ECF No. 12-1, PageID.1542, 1553).  While Plaintiff's attorney, Erin Rich, may feel compelled to argue vociferously on behalf of her client, the Court strongly reminds her that she has an independent obligation to the Court to present only non-frivolous legal arguments and factual contentions with evidentiary support.  *See, e.g.*, Fed. R. Civ. P. 11.

between his testimony and the dictionary of occupational titles. (*Id.* at PageID.1524). Plaintiff did not challenge this conclusion on cross examination. (*Id.* at PageID.1524–25). He has therefore waived this argument. *Accord Munger v. Comm'r of Soc. Sec.*, No. 19-cv-12830, 2021 WL 1186494, at *4 n.5 (E.D. Mich. Mar. 30, 2021) ("[I]n 2020, the Sixth Circuit held that a plaintiff waives any argument about discrepancies between a VE's testimony and the DOT when Plaintiff's counsel does not cross-examine the VE at the ALJ hearing.") (citing *O'Neal v. Comm'r of Soc. Sec.*, 799 F. App'x 313, 317–18 (6th Cir. 2020)); *see also Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 982 (6th Cir. 2011) ("[B]ut as the district court pointed out, plaintiff's counsel had the opportunity to cross-examine, but asked only one question and did not probe the deficiency now identified on appeal."). Therefore, Plaintiff's motion for summary judgment is denied.

## III. ORDER

For these reasons, Plaintiff's motion (ECF No. 14) is **DENIED**, the Commissioner's motion (ECF No. 16) is **GRANTED**, and the ALJ's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

Date: April 13, 2026                    S/PATRICIA T. MORRIS
                                        Patricia T. Morris
                                        United States Magistrate Judge

31